Litigation. Case number 19 1958. Domestic Airline Travel Antitrust Litigation. Ms. St. John for the appellants, Ms. Edwards, Ms. Kenney for the appellees. Ms. St. John is not here. Good morning. Good morning. May it please the court. Anna St. John on behalf of appellants Michael Frank Bednars and Theodore H. Frank. Frank and Bednars are objecting class members who are seeking to protect their rights to appeal the approval of two settlements that potentially provide them and other class members with zero relief. The class notice here specifically leaves open the possibility that the entire settlement fund after attorneys fees and class representative awards will be paid to third parties as site prey. The district court failed to analyze this distribution issue and the claims process as rule 23E2C2 requires. Didn't the district court say that the district court was doubtful there would be such an award but if there would, there would be another order and additional notice? So both class counsel and the district court did express the view that they were not inclined to have the settlement. No, no. My question was didn't the district court say if there's going to be a site prey award there will be additional notice? Yes, your honor. The court did say that. So doesn't that protect you? No, your honor, for two reasons. First, a right notice does not necessarily guarantee a right to opt out of the settlement or to object. You could challenge it then when we have a real order. I mean this may never happen. Right? It's conceivable there will never be a site prey award. That's right, your honor, but if this court affirms final approval of the settlement, class members will have no recourse if in fact the settlement is all awarded to site prey. I don't understand that. I don't understand that. Explain that to me. Okay. Yes, of course, your honor. If we don't know at this stage whether or not any settlement funds or all settlement funds will be paid to site prey. However, if the court affirms the approval of the settlement here, then class members will not have an opportunity to opt out of the settlement. Their claims will have been released and the settlement funds that represent their money, the value of their claims that were released, will go to organizations and causes that they may not wish to support. You know, some of the biggest abuses in site prey settlements is that funds go to organizations that the defendant is already donating to, which is essentially just a change in accounting entries. It doesn't actually cost the defendant anything. Or it's an organization affiliated with class counsel, maybe an alma mater or an organization where they sit on the board of directors. And so having the opportunity to object and opt out addresses this conflict of interest, and it allows class members to avoid having their money support causes they disagree with in violation of the first amendment. Can you try again, though? Why can't you just object to a site prey order when there is a site prey order? So even if a class member could object, that doesn't mean the court is going to agree with the objection. They still may be stuck having their money going to causes they don't want their money going to. Whereas if they can opt out of the settlement, they keep their claims. Their claims will not be released by the settlement, and they can do whatever they want with those claims. They can either just let them die or bring them to a separate lawsuit. You know, we have the issue here where the parties changed their mind on another issue. We saw the parties switch positions on the issue of finality before the district court. The court questioned both sides as to the need for or whether it could hold off on approving the settlements until the other defendants settled or otherwise resolved their cases so that it would have full information about the distribution of the funds. Class counsel and defendants were adamant that the lack of finality could jeopardize the settlement and the cooperation that defendants are providing under the settlement. The settlement requires the parties to seek a 54B judgment, and the proposed final approval order included language making 54B findings. The district court specifically relied on those representations about finality in its final approval order. Sorry to interrupt you, but am I remembering correctly that at a certain point in this appellate process, it was your position that we don't have jurisdiction and then now it's your position that we probably do, although if we don't, there's a certain way that you want us to say that. If my memory is right, what accounts for the change of opinion? Well, we think it's ambiguous. You know, under a strict reading of 1291 and 54B, we fully acknowledge that the district court did not make the findings under 54B that would allow an appeal of a partial settlement to be appealed. Looking at it a little more closely and thinking about how this progresses, if we are not allowed to appeal now, you know, if we are opposed entirely by the case law, I think that 1291 can be given a functional reading, especially under Gelboyne v. Bank of America. Are there any cases giving it that type of functional reading in the circuit or the Supreme Court? Not this specific type of functional reading, your honor. There's no case law directly on this issue, and that's what makes this a bit of a hard case for us and, you know, we're really ‑‑ I mean, so ordinarily parties who seek to appeal, they have a burden of establishing jurisdiction, but you're telling us that jurisdiction is uncertain, so have you not even met your burden of moving ahead with this appeal? Well, we have provided grounds on which there could be jurisdiction, but we want to be  in that there's no case law directly on point saying that there is definitively jurisdiction. So in our view ‑‑ Sure. Yeah. I was just agreeing with you. Yes, your honor. We appreciate your candor. No, you're being very candid. That's extremely helpful to us, but given that, Judge Rao's question is pretty important. Given that doubt, how can we find jurisdiction here? Well, I think that there are arguments that do support jurisdiction, and I'm sure amicus will address those more fully, but here there is a question of what happens to our appeal rights if the settlements with the remaining two defendants, Delta and United, don't go through in the NDL context. But amicus doesn't have a burden of establishing jurisdiction. I mean, that's what we've asked them to do, and they have done that, but it's your obligation, right? It's your client's obligation to establish jurisdiction. Well, we've presented arguments on which we believe jurisdiction could be found. Tell us your best argument for jurisdiction. Our best argument is that the district court's order is called expressly a final approval order. It finally adjudicates all of the claims of two defendants in this case. Southwest and American are out of the case completely. That's a final decision under 1291, except for the fact that we have this unique NDL context where there are two defendants still litigating claims in the district court. So 1291 has been the precedent establishes that it should be given a flexible, functional reading, and here you can definitely take the final approval order as a final decision from which class members appeal. Ms. St. John, could you have taken another procedural approach such as filing a protective appeal? Or is there some other mechanism you could have used in a situation like this where the timing for appeal was uncertain? We would welcome the interpretation of our appeal as a protective appeal. We were very uncertain as to whether the parties were going to ask for a 54B judgment and whether it would foreclose our rights to appeal at any point. We would welcome that approach. We would welcome bright line rules about when class member objectors and NDLs are required to appeal. You know, the parties could change their positions later, and so we really were in a quandary about when to appeal and how to protect our appellate rights. So, you know, if the court does hold that there is no jurisdiction, we do ask that it expressly state that the final approval order is not a final decision under 1291 so that we don't have collateral litigation later over whether or not our subsequent appeal is timely. And you said I understand your brief. You feel you'll be completely protected if we enter an order saying we don't have jurisdiction because there's no final order here, right? Partially. There is the issue that if the NDL falls apart, we don't know what would trigger the final decision from which we could subsequently appeal. You mean if the cases all go back to the originating court? Yes, your honor. The cases are transferred back to the originating courts. You know, is it the transfer order? Is it the first judgment in the separate cases that go back? It's unclear. Suppose our order says that there's no final judgment here and we expect the district court should send the case back to the originating courts to enter a 54B order. Would that protect you? The order would state that if it were to stay. The order would state that our determination that it's not final is on the basis of the assumption that if it does go back to the originating courts, the district court will issue a 54B order. I think that would be very helpful, your honor. Okay. Why don't we hear from amicus since we're talking about jurisdiction? Okay. Thank you, your honor. Erica Hashimoto as court appointed amicus in support of jurisdiction and with the court's permission, Hallie Edwards, a third-year law student at Georgetown will make the argument in support of jurisdiction. Thank you. Thank you. Good morning. Good morning, your honors, and may it please the court. This court faces a novel question. In an MDL, is an order granting final approval to two settlement agreements with two out of four defendants and then dismissing the settling defendants with prejudice final under section 1291 allowing objectors to those settlement agreements to appeal now? Under the Supreme Court's decision in Gelboim, the answer is yes. Bednars and Frank, the objectors entered the litigation solely to object to the American and Southwest settlements. They are not parties to any of the 105 cases underlying the MDL. Under section 1407, those cases will be remanded to their originating districts at the close of pretrial proceedings. If the objectors cannot appeal the settlement determination now, they face an MDL-specific quandary concerning the objectors' ability to appeal. Because they were not parties to any of those underlying cases, it is entirely unclear where or if or when they could appeal after the cases are remanded. In Gelboim, the Supreme Court recognized such jurisdictional quandaries can be solved with a simple solution, and that is immediate appeal. The order is final under 1291 because it was titled a final resolves American and Southwest role in the litigation, dismissing them with prejudice and setting the money owed on their liability. This case, though, is different from Gelboim. The objectors here are not plaintiffs. That was a case where there was a they dismissed one of the many cases. Here the objectors are not parties to any case, and they're not plaintiffs. And so the case is different from Gelboim.  than Gelboim. The case is much more complicated than Gelboim. The case seems completely different from Gelboim to me. Is that not right? That's exactly right, Your Honor. This case is much more complicated than Gelboim. Bednarz and Frank are not plaintiffs. They are objectors to the litigation. But under the Supreme Court's decision in Dublin, objectors are not part of the case.   And so they have no legitimate purpose of appealing settlement determinations, and they're not full-fledged parties to the underlying case. Moreover, under this go ahead. No problem. Under this court's decision last year in Moloch v. Whole Foods, putative class members are not parties to litigation, which is these two things taken together along with American and Southwest finality gives us finality under 1291 as to all claims and all parties relevant to Bednar's and Frank's objection within the MDL. And under Gelboim, the question of which claims and parties matter for the 1291 analysis is a practical determination building on Supreme Court case law that for the most part recognized a practical rather than a technical construction of 1291, and in Gelboim, the court recognized that the possibility of losing later appeal is a reason to find 1291 finality when those quandaries exist. Here the quandary is pronounced as Bednar's and Frank, as your Honor pointed out, are not plaintiffs, they're objectors, and under the settling parties theory of finality, if the cases are remanded to the originating courts, in cases such as Hildy Henderson, there's a real problem that some circuits may not find they have jurisdiction over the interlocutory order from the district court merging with the final order in a transfer court. In McGeorge v. Continental Airlines, which is a 10th circuit case discussed extensively in Hildy Henderson, which is when one of the cases the settling parties cite for that proposition, the 10th circuit found it did not have jurisdiction over claims that had been dismissed from an out-of-circuit district court, and acknowledged that those claims were in quote hiatus, and this court in Hildy Henderson acknowledged that those claims had been orphaned under that reading, and that's a problem here not only because one of the airline's cases originates in Oklahoma, but because it acknowledges that in the event the cases are remanded, there's a real question as to whether every circuit would even find it has jurisdiction over the objector's appeal. So because of that specific quandary that exists, under Galboy, we urge this court to  as final under 1291 and exercise jurisdiction over the objector's appeal. Thank you. Unless my colleagues have any questions, thank you, Miss Edwards. Thank you. We will hear from Miss Kenny. Good morning. Janine Kenny for Appalese and Respondents, and may it please the court. Galboy did not establish a new practical construction for finality under section 1291. What Galboy was explaining was why the rule of finality should not be suspended just because it's an MDL. It didn't deem the order that the district court issued in that case to be final. It found it was final, and then the question was, was there any reason to consider it non-final in that case? That's because there were three separate class actions pending in that case. The cases cited by amici are not to the contrary. They all involve exactly the same circumstance, and that is where separate cases are proceeding before an MDL court. Any final order disposing of all parties and all claims in those cases are final. So there's nothing remarkable about Galboy, and footnote five of that case makes pretty clear that the court is not looking at a new practical construction, and, of course, Mohawk Industries v. Carpenter makes very clear that courts should exercise significant caution in any new practical construction of section 1291. There's also no authority, as I think appellants admit, that termination of a party or non-party's distinct role in a case has any application under section 1291. 1291, as the courts have interpreted it, applies when the court disposes of all claims against all parties, and there's nothing left to do but execute the judgment or where the court completely disassociates itself from the case. The factors that the courts look at to evaluate finality, the intent of the court, for example, really applies only where there is an order that does apparently end all claims as against all parties, but there's some ambiguity to that order, and that's where the court looks to intent, where it's very clear that an order is interlocutory, as is very clear in this case, and I think everybody admits, does not dispose of all claims at all parties. You don't look to intent, and you don't look at how the court characterized the order, and that's expressed in Rule 50B4. But let's suppose that even if Gilboin did establish this rule that a non-final order could be deemed final if there were no opportunity to appeal. I want to address some of the practical concerns that have been raised and maybe in the court's mind. There's no question that the objectors will have an opportunity to appeal in this court, and that's because of the nature of this action. The court made very clear the reason it was denying finality under or denying entry of a Rule 54B judgment when we asked the court for it, and again when appellants asked for it, was because it believed that the objections raised were entirely premature and may could be resolved later if they remain or may be entirely mooted, and that's entirely within its discretion, and when those concerns, when it will be clear whether those concerns remain or are mooted is when the final amount for settlement distribution will be known, and that's what the court is waiting for to determine whether there are additional settlements or there's a judgment in this case at which point it will be appropriate, that will be the appropriate time to distribute the settlement funds. There's nothing to suggest that when that opportunity arises, the court is going to deny a Rule 54 entry of Rule 54B judgment. The amount for distribution in this case is going to be known under four circumstances. One, United and Delta settle, and then the case is over. No need for a 54B judgment. Second circumstance is we're in the middle of briefing summary judgment right now. That will close shortly. We may lose on summary judgment. I don't think we will, but we may lose, and that will be final judgment as to this consolidated amended complaint, and it will be clear that there will be no additional settlements, and we will proceed with distribution then. Propose a plan, notice a plan. The court appellants can object to the plan, and the court can accept or reject it. The third circumstance is that the class is certified, and when the class is certified, the case will proceed to trial, and it will proceed to trial in this court. There's no opportunity for those individual cases to be remanded because they will be subsumed in the single nationwide class that the court certifies, so there's no issue with remand, and why will the class trial proceed here? Because plaintiffs filed a consolidated amended complaint that superseded their prior complaints. It pleaded proper venue here. Venue was not objected to. We've consented to trial before this court. Even if that were not the case, the parties can always consent to trial before the MDL court, and in class action cases, that is what happens because the court has been presiding over the matter for a number of years, so that class case will proceed to trial here, and when that trial is over, we'll proceed, there will be final judgment one way or the other, and we can proceed to distribute the funds, including any funds from judgment. The concern that appellants raise is, and amicus raise, really can only occur if the class is not certified, and if the class is not certified, it will also be clear that there is no opportunity for further class-wide settlements. Why? Because defendants don't settle on a class basis when a class certification has been declined, and at that point, the court would issue a rule 54B judgment. Going back to the certification of the class, as I mentioned, the individual cases get subsumed. They get subsumed. Ms. Kennedy, going back to your fourth hypothetical, your fourth possibility, rather, what if the district court does issue a rule 54B? If the court doesn't issue a 54B judgment, there are several options. One, the parties could seek appeal of that decision. We could seek appeal by seeking a writ of mandamus. At that point, we'll want to distribute the funds. We want to get the settlement funds out to the class, and certainly objectors will want to appeal that decision, but it doesn't even need to come to that point because there were cases filed directly in this court. They're not going anywhere. The consolidated amended complaint is filed in this court and that action isn't going anywhere, and one of the named plaintiffs in that action, Mr. Yaninas, filed his original complaint, which he amended with the consolidated amended complaint, in this court, so that consolidated amended complaint, even if it proceeds on a non-class basis to trial or is voluntarily dismissed if class certification fails, that will be decided in this court, and even if none of that was an option, there is an argument that the court's decision under this court's precedent under Ruber v. United States, that's 773 F 1367, may vest this court with appellate jurisdiction if all of the cases are transferred out, they all scatter to the wind, the court completely disassociates itself because the MDL is over. In Ruber, the court had held where there was a partial dismissal of parties, and the case is transferred out of circuit for further proceedings, that the court has appellate jurisdiction then. That case addressed section transfer under 1404A, but the court could decide at that time that the rule applies to transfer out under section 1407 as well. But I think the larger point is because it is unlikely, in fact improbable that appellants won't have the opportunity to appeal a final judgment to this court from this district court, deciding whether there's jurisdiction on these facts is entirely premature. The court could decide at a later point whether or not there needs to be a new practical construction despite Mohawk's admonitions of section 1291, whether to extend Ruber to a section 1407 transfer, and whether to issue a mandamus if the court for whatever reason declines to enter rule 54B judgment. We have no reason to believe that Judge Kohler-Catelli would not do so because she explained her rationale for not granting a rule 54B judgment very clearly in her opinion on the motion to show cause. So for all of these reasons, this court does not have jurisdiction now. We don't have a final order. It's clearly interlocutory. There's no exception under Gelboim that could possibly provide jurisdiction here. And even if there is a concern about appellant's opportunity to appeal, that concern is likely premature because none of the circumstances that they are concerned about have yet arisen. Thank you. If you have questions, I'd just like to address the merits very quickly. You're way over time, I think. So you can take one minute. Go ahead. Quickly. Okay. Certainly. One minute. If the court reaches the merits we think that this court should affirm, we think the papers make very clear and the record in this case makes very clear that the court considered, clearly considered the method of distributing the relief to the class. Appellants just don't like the outcome. They disagree with the outcome and that does not establish abuse of discretion. Appellants also contend that the lack of specific notice regarding the means of distribution in the notice was abuse of discretion to approve that notice. They've established no case law that requires that, and they don't dispute that we satisfied the notice satisfied all the criteria under rule 23C2. And on your Cypre complaint, your Cypre concern, what's your answer to that? The Cypre concern is entirely premature. We've made very clear to the court that we don't expect a Cypre distribution here, but we can't with 100% certainty rule it out, and if we had tried to rule it out and so we told the class that, and we had to tell the class that so that they could exercise their option to opt out at that point in time. But and had we told them that it would absolutely be pro rata, which is our intent, that would have misled them because if in the unlikely chance that there does need to be an all or partial Cypre settlement, they may have stayed in the class when they would have otherwise chosen to opt out. And so we told the class everything we could tell them based on the information we had at the time. The class will receive additional notice at the appropriate time. They will have the opportunity to object, and any objections appellants have will be right for appeal then. All right. Thank you. Thank you. Let's see. Ms. St. John and Ms. Edwards, you were both out of time, but you can each take one minute. Thank you, Your Honor. I want to go back to Judge Rall's question about why we didn't file a protective appeal. That's what we thought we were doing. We asked the court to hold the appeal in abeyance, and then we asked for the same order that we're asking for now, which is that if the court dismisses due to jurisdiction, it can do so, but please make clear that the final approval order is not a final decision that would foreclose our appeal rights. The court ordered full briefing and appointed amicus on the jurisdiction issue, and we had to pursue the appeal to avoid a later finding that we appealed too late, which has happened in other cases. So we believe we did file the protective appeal that was needed, and that's simply what we're doing here is trying to protect our appeal rights. We believe that the court doesn't simply affirm because once the settlement is approved, certain rule 23 issues cannot be unwound or protected, even simply through the objection right. If the settlement is all-side prey, it raises issues with certification. It raises the adequacy of representation issue with a class counselor representative to agree to a settlement that's all-side prey, and so there are rule 23 problems that infect the entire settlement, and so that needs to be able to be unwound without a denying class members the right to object and opt out. Thank you, Your Honor. Thank you. Ms. Edwards. Thank you, Your Honor. Two quick points on rebuttal. First, we agree with counsel for Appelese that Gelboeum did not announce a new finality rule under 1291. What Gelboeum had to determine was whether in a consolidated MDL case, which parties matter when asking the question of all claims and all parties within the MDL. The same defendants the Gelboeum plaintiffs were litigating against continued to litigate in the MDL after their claims were dismissed, but the court looked at finality as to just the Gelboeum plaintiffs because of those practical concerns. Second, counsel for Appelese tells a story about how exactly appeal would arise in this court, but it's necessarily speculative and at every stage presented, including a 54B certification, or the possibility of trial in the MDL court, there's a reason why that might not happen. 54B certification is discretionary. Under lexicon, plaintiffs can insist on remand to their originating courts, so for those reasons, we urge the court to recognize the uncertainties at play here and find that this is final under 1291 and assert jurisdiction over the objector's appeal. Thank you. Ms. Edwards, you and your colleagues at Georgetown were appointed to serve as amicus and we're grateful to you for your assistance. The case is submitted.
judges: Tatel, Rao, Walker